# THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

JOHNNY L. HARDEMAN,    )
a.k.a. Lo´re Pink,[1]    )
    )
        Plaintiff,    )
    )
v.    )    **No. CIV 16-238-RAW-SPS**
    )
JESSICA SMITH, et al.,    )
    )
        Defendants.    )

## OPINION AND ORDER

This action is before the Court on Defendants' motion to dismiss or for summary judgment. The Court has before it for consideration Plaintiff's complaint (Dkt. 1), Defendants' motion (Dkt. 55), Plaintiff's response to the motion (Dkt. 58), and a special report prepared by the Oklahoma Department of Corrections ("DOC") at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 54).

Plaintiff, a pro se prisoner in the custody of the DOC who is incarcerated at Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during incarceration at OSP. The defendants are Jessica Smith, PREA Monitor/OSP Assistant Warden; Jerry Perry, OSP Unit Manager; Heather Diaz, OSP Psych Services; Patricia Sorrells, OSP Medical Administrator; Mark Knutson, Director's Designee; David Parker, DOC Regional Director; and OSP Warden Jerry Chrisman.

Plaintiff states the following with regard to the nature of the case:

> I am a transgender woman incarcerated in a male prison facility. I am being openly discriminated [against] in several ways solely because I am transgender. I am not recieving [sic] "any" medical treatment for my gender

---

[1] Plaintiff was granted a legal name change on November 7, 2017. (Dkt. 68 at 3).

> non-conforimg [sic] disorder.  I am placed involuntary [sic] on a harsh
> segregation unit aganist [sic] my will and not allowed any hearings to show I
> don't need to be on this eatreme [sic] isolation unit.  I am being denied a
> transfer to a lower security though I fit all the criteria solely because employess
> [sic] are mad that I file griveances [sic] and complaints.  I am being denied:
> Jobs, Programs, and Parole.  Have been assualted [sic] by staff while on this
> segregated unit. Defendants freeze frame [illegible] policy on not transferring
> transgender inmates from single cell status is discriminatory.

(Dkt. 1 at 2).  Plaintiff has set forth the following grounds for relief:

Count I:  Defendant Patricia Sorrells, OSP Medical Administrator, abruptly stopped

medication Plaintiff had taken for 15 years, solely because Plaintiff was filing grievances and

complaints.

Count II:  Defendant Jerry Perry, OSP Unit Manager, refused to give Plaintiff a

hearing to explain the reason for Plaintiff's solitary confinement and single-cell status.  Perry

also allegedly denied Plaintiff a job, program, and parole investigation.  Plaintiff's placement

in isolated conditions resulted in denied access to care.

Count III:  On February 9, 2016, Plaintiff filed an appeal to Defendant Mark Knutson,

Director's Designee of the Administrative Review Authority ("ARA").  The ARA responded

on February 17, 2016, eight days later.  Although DOC policy states an inmate has 15 days

to file an appeal, Knutson stated Plaintiff's appeal was untimely.  Plaintiff alleges Knutson's

actions were intended to delay and deny access to treatment and care.

Count IV:  On or around September 2015, Plaintiff was introduced to Defendant

Heather Diaz by Psych Services Employee Mr. Garvin.  Garvin explained to Diaz that

Plaintiff had been struggling with gender identity while at the supermax facility.  Diaz

immediately began using the terms "her," "girl," and "woman," when speaking with Plaintiff.

Diaz then instructed Plaintiff to submit a Request to Staff ("RTS") with all of Plaintiff's

"gender identity needs" to Diaz and Dr. Stem.  Plaintiff followed Diaz's instructions but

received no response to the RTS.  After waiting months, Plaintiff asked Diaz why there had

been no response to the RTS. Plaintiff alleges having experienced symptoms from being in solitary confinement, such as mood swings, migraines for months, dizziness, and chest and stomach pains. Diaz's only response consisted of denials, delays, and deceit. Plaintiff asked to see a transgender specialist and was attacked by staff for self-presentation according to Plaintiff's gender feelings. Plaintiff did not have a one-on-one meeting with Diaz.

Plaintiff followed the new prison policy for gender non-conforming offenders, OP-140147, and gave Diaz a gender referral request regarding clothing, housing, needs, etc. Diaz, however, allegedly did not scan the referral, and Plaintiff was denied treatments that were freely given to other inmates.

Count V: Defendant Jessica Smith, the facility Prison Rape Elimination Act ("PREA") monitor and assistant warden, assigned Plaintiff to a security housing unit ("SHU") without explaining why the placement was made. Plaintiff had been double-celled, but when the transfer to the SHU occurred, the assignment was for an extremely isolated single cell. Plaintiff asserts the SHU placement did not result from a disciplinary matter and claims the assignment was solely because Plaintiff is a gender non-conforming offender. Plaintiff has been on the SHU for over a year and claims to have never received a hearing about the placement or a date for release. Plaintiff alleges this placement violates OP-030601 and OP-140147, which state that the LGBTQ community shall not be placed in dedicated units, except for limited periods of time and with consideration of alternatives. Plaintiff complains that other inmates have transferred to a lower security level, and although Plaintiff meets the criteria, no such transfer has been allowed for Plaintiff, worsening Plaintiff's gender identity. Plaintiff further claims that Smith will not allow a transfer because of Plaintiff's grievances and complaints against Smith and other staff.

Count VI: Warden Jerry Chrisman allegedly is aware of and is sanctioning Plaintiff's

placement in a single cell without prior notice or hearing and without any disciplinary reason. Plaintiff alleges this solitary confinement violates Plaintiff's rights and privileges, as well as prison policies. Chrisman allegedly has failed to correct the illegal actions and conduct of Defendants Diaz, Perry, and Sorrells related to intentional delays and denials of medical care needed by Plaintiff. Defendant Chrisman also allegedly encourages the continuation of this misconduct. Plaintiff asserts that on or about December 22, 2015, Chrisman told Plaintiff that "as long as you are transgender, I will never take you serious, and will leave your ass on lock-up and single celled!" Chrisman also allegedly encouraged the ban on transgender inmates receiving transfers from single-cell status to justify Plaintiff's being on 24-hour lock-up with no release date. Other inmates, however, allegedly were transferred from single cells.

Count VII: Plaintiff allegedly wrote to Defendant DOC Regional Director David Parker on several occasions, begging for assistance with the "torture" inflicted by the defendants. Parker refused to intervene and forced Plaintiff to seek help from the individuals who were causing the problems. Parker's actions or failure to act allegedly contributed to the denial of needed medical care for Plaintiff. Parker has known for decades that Plaintiff walks, talks, and looks like a woman and that Plaintiff has a gender identity disorder. In addition, Plaintiff claims Parker has colluded with the other defendants to deny Plaintiff needed medical care, resulting in Plaintiff's pain and suffering.

**Standard of Review**

Defendants have filed a motion for summary judgment (Dkt. 55). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Exhaustion of Administrative Remedies**

Defendants allege, among other things, that Plaintiff has failed to exhaust the administrative remedies for any of the claims set forth in the complaint. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). Substantial compliance is not sufficient. *Id.*

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Futility is not an exception to the exhaustion requirement. *Jernigan*, 304 F.3d at 1032. Failure to exhaust is excused only

if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

Defendants allege that two different versions of DOC's grievance policy were in place during the relevant time periods of Plaintiff's allegations: OP-090125 (effective November 20, 2014) (Dkt. 54-5), and OP-090124 (effective July 19, 2016) (Dkt. 54-4). Defendants have set forth the process as follows:

"A grievance may be used to address issues regarding conditions of confinement, [and] actions of staff . . . ." (Dkt. 54-4 at 4; Dkt. 54-5 at 6). The first step of the informal resolution begins with talking to appropriate staff within three days of the incident. (Dkt. 54-4 at 7; Dkt. 54-5 at 9). If not resolved, a Request to Staff must be submitted. *Id.* If, after these steps, the issue is not resolved informally, then an offender grievance must be submitted to the reviewing authority. (Dkt. 54-4 at 9; Dkt. 54-5 at 11. The offender grievance must be submitted by the offender within 15 calendar days from the date of the response to the RTS. *Id.* Only one issue or incident is allowed per grievance. (Dkt. 54-4 at 10; Dkt. 54-5 at 11). After the reviewing authority answers, an appeal may be made of the reviewing authority's response. (Dkt. 54-4 at 13; Dkt. 54-5 at 14). A final appeal may be made to the Administrative Review Authority ("ARA"). (Dkt. 54-4 at 13; Dkt. 54-5 at 15). A final ruling from the ARA is required to properly exhaust administrative remedies. (Dkt. 54-4 at 15; Dkt. 54-5 at 17).

Defendants allege Plaintiff attempted to follow the DOC procedures for filing grievances, but the administrative remedies were not properly and fully exhausted in compliance with the PLRA, as evidenced by the documentation attached to the complaint. To properly exhaust administrative remedies, a final ruling from the ARA is mandatory.

**Grievance 2015-33**

On September 2, 2015, Plaintiff filed a "sensitive grievance," complaining there had been no response to the various medical requests and RTSs submitted to staff regarding a request for hormone treatment. (Dkt. 54-7 at 2). The grievance, however, did not include the required documentation of an RTS, so it was returned. *Id*. at 3. On September 22, 2015, Plaintiff appealed to the Medical Services Administration. *Id*. at 4. The appeal was returned unanswered, because the grievance issue was not of a sensitive nature and the standard grievance process was required. *Id*. at 5. No further action was taken by Plaintiff.

**Prison Rape Elimination Act ("PREA") RTS**

On November 11, 2015, Plaintiff submitted an RTS to the agency PREA coordinator, requesting gender-conforming items. (Doc. 54-8 at 2). The November 21, 2015, response stated that the "requests should be handled through the facility & the warden . . . in accordance with the agency grievance process . . . and the management of gender non-conforming offenders policy . . . ." *Id.*

**Offender Request**

On December 29, 2015, Plaintiff submitted a Request to the Medical Services Administration, asking Dr. Morgan to check on documents submitted at OSP regarding hormone therapy. (Doc. 54-9 at 2). The request was returned unanswered on January 28, 2016, advising that the incorrect form was submitted and informing Plaintiff of the proper method to seek the desired assistance. *Id*. at 3. No further action was taken by Plaintiff regarding this request.

**Grievances 16-04 and 16-07**

On January 13, 2016, Plaintiff submitted an RTS to Defendant Patricia Sorrells, OSP Medical Administrator, regarding the initiation of review by the Personal Identity

Administrative Review Authority ("PIARA") for "gender conforming products and needs." (Dkt. 54-10 at 2). In response, Plaintiff again was advised to file a grievance to initiate the review and that everything Plaintiff had submitted had been forwarded for review. *Id.* Plaintiff submitted Grievance 16-04 on January 26, 2016, seeking hormone treatment, female clothing and toiletries, medical counseling, and removal from single-cell status. *Id.* at 3. On January 28, 2016, the grievance was returned unanswered, because the request for relief in the grievance was different from the request for relief in the RTS. *Id.* at 4. Plaintiff was given 10 days to correct the error. *Id.*

Plaintiff next submitted Grievance 16-07 on February 3, 2016, requesting to have a referral for gender products scanned to PIARA. *Id.* at 7. The response stated the grievance was procedurally defective, because it did not include a corresponding RTS. *Id.* at 8.

Plaintiff appealed both grievances to the ARA on February 12, 2016. *Id.* at 5. The response, dated February 17, 2016, stated the appeal was improperly submitted for multiple procedural reasons, including the fact that two grievances were being appealed at once. *Id.* at 6. Plaintiff was given "one final opportunity" to submit a proper grievance appeal within 10 calendar days. *Id.*

Plaintiff appealed the February 3, 2016, grievance to the ARA on March 28, 2016. *Id.* at 9-10. The response, however, stated that the appeal was submitted out of time. *Id.* at 11. On May 5, 2016, Plaintiff submitted a Request to Director To Submit an Appeal Out of Time, which was denied on that date. *Id.* at 12-13.

**ARA 16-05 and 16-84**

On January 6, 2016, Plaintiff forwarded Grievance 16-05, dated December 25, 2015, to the ARA, complaining that no response to a grievance filed on November 25, 2015 had been received. (Doc. 54-11 at 2-3). The January 6, 2016, response from the ARA stated the

grievance was improperly submitted because it was not on an appeal form, it did not include a facility response to the grievance, and it otherwise failed to comply with the procedure for addressing unanswered grievances. *Id.* at 4.

On February 8, 2016, Plaintiff submitted Grievance 16-84 to the Director's Office through the ARA, alleging both the November 25, 2015, grievance and the December 25, 2015, grievance went unanswered. (Doc. 54-8 at 3). The March 10, 2016, response by the ARA advised there was no record of OSP's receipt of the grievances. *Id.* at 4. No further action was taken by Plaintiff.

**Transgender Specialist RTS**

On February 14, 2016, Plaintiff filed an RTS with Millicent Newton-Embry, the PREA Coordinator, requesting that the agency hire a "transgender specialist" as the PREA monitor. (Dkt. 54-8 at 5). Plaintiff complains that no answer was received. (Dkt. 58 at 15).

Defendants alleges the RTS was filed after this lawsuit was initiated. The complaint, however, was filed on June 3, 2016, after the RTS was filed. Nonetheless, Plaintiff apparently did not follow the procedure for addressing an unanswered RTS. *See* OP-090124 (IV)(C)(10) ("If there has been no response in 30 calendar days of submission, the offender may file a grievance to the reviewing authority with a copy of the "Request to Staff" attached to the grievance form. The grievance may assert only the issue of the lack of response to the "Request to Staff.") (Dkt. 54-5 at 10-11). Therefore, the Court finds this claim is unexhausted.

Plaintiff alleges in the response to Defendants' motion that the defendants have thwarted completion of the exhaustion process by their own actions. (Dkt. 58). Plaintiff references Health Services Policy OP-1401147, "Management of Gender Nonconforming Offenders," which states:

For the purpose of ensuring adherence to PREA standards for the management and care of gender nonconforming offenders, the director will appoint a designee/designees to serve as the Personal Identity Administrative Review Authority (PIARA). PIARA may consist of any or all of the following: (1) Chief mental health officer; (2) Chief medical officer; (3) Agency PREA coordinator; (4) Health services division manager, (5) Inmate's facility head or designee; and/or (6) Medical and mental heath provider at facility level.

(Dkt. 58-1 at 11).

Plaintiff contends the policy does not name the Director's Designee, who was the official who answered Plaintiff's ARA appeals. Plaintiff apparently is arguing that any of the actions taken by Director's Designee Knutson on behalf of the ARA were invalid. The Court finds this contention is unsupported and meritless.

Plaintiff also alleges the following in support of the allegation that the claims in the complaint are exhausted:

- On December 10, 2015, Plaintiff submitted an Offender Request to Defendant OSP Medical Administrator Patricia Sorrells, inquiring about forms Plaintiff had sent to Sorrells' office and stating Plaintiff was confused about Sorrells' response to the RTS that was returned on that same date. Plaintiff requested that Sorrells send the forms to Dr. Diaz or return to forms to Plaintiff. (Dkt. 58-1 at 21).

- On December 29, 2015, Sorrells responded to the Offender Request, advising that she sent the forms to Jessica Smith, PREA Coordinator, for review of Plaintiff's requests. Sorrells further advised that Smith could forward Plaintiff's request for PIARA review in accordance with to OP-140147. Sorrells stated that Plaintiff "need[ed] to comply with OP-140147 and file for OP-090124 'Offender Grievance Process' to start your case by case review by PIARA." (Dkt. 58-1 at 21).

- On December 29, 2015, Plaintiff sent an RTS to Sorrells (Dkt. 58-1 at 17), pursuant to OP-140147, effective October 29, 2015, "Management of Gender Nonconforming Offenders." (Dkt. 58-1 at 1). **The action requested was that Sorrells scan the PIARA request.** Plaintiff claimed in the complaint that a request to initiate a PIARA review previously was sent to Sorrells, and the request should have been faxed or scanned to the agency PIARA, pursuant to OP-140147(III)(B). (Dkt. 58-1 at 4).

- The January 4, 2016, response by Sorrells to the December 29, 2015, RTS advised that Plaintiff previously was informed that a grievance must be filed before a review can be done. Sorrells also acknowledged she received Plaintiff's request for a referral and advised she had forwarded everything Plaintiff had sent for review. (Dkt. 58-1 at 17).

- On January 26, 2016, Plaintiff filed Grievance No. 16-04, as recommended by Sorrells. **The action requested was to begin hormone treatment, to be allowed panties and bras, makeup and female hair products, emery boards, [illegible], barrettes, earrings, [illegible] clips, hair rakes, perm, tweezers, bathrobe, electric curlers, etc., sewing kit, and counseling on surgery. Plaintiff also asked to be removed from solitary confinement, single-cell status. Plaintiff stated the denial of these things has caused him stress and migraines, and he "begged" for PIARA to help him.** (Dkt. 58-1 at 22).

- On January 28, 2016, Defendant Sorrells returned Grievance No. 16-04 unanswered, because Plaintiff's issues and requests in Grievance No. 16-04 were different from those in the RTS. (Dkt. 58-1 at 23). Plaintiff asserts Sorrells' statement is incorrect, and the RTS requested the same relief as this grievance.

- On February 3, 2016, Plaintiff filed Grievance No. 16-07 in response to the instructions from Sorrells on January 28, 2016. **This grievance requested that Sorrels "scan the referral for gender products etc. to PIARA."** (Dkt. 58-1 at 24).

- On February 5, 2016, Sorrells returned Grievance No. 16-07 unanswered for Plaintiff's failure to correct the errors. A notation read, "You must submit a request that matches your grievance! We must be given opportunity to resolve by policy." (Dkt. 58-1 at 25).

- On February 12, 2016, Plaintiff filed an appeal of Grievance Nos. 16-04 and 16-07 to the ARA (Dkt. 58-1 at 26). On February 17, 2016, Plaintiff was notified that the ARA office would not process the appeal, because it was on the wrong form, and Plaintiff was attempting to appeal two grievances at once. Plaintiff was given one final opportunity to submit a proper grievance appeal within ten days. (Dkt. 58-1 at 27).

- On April 8, 2016, the ARA notified Plaintiff's that the grievance/correspondence concerning Grievance No. 16-07 was improperly filed, because it was received out of time. (Dkt. 58-1 at 50).

- On May 5, 2016, Plaintiff submitted a Request to Director to Submit a Misconduct/Grievance Appeal Out of Time for Grievance No. 16-07, which was denied on that same date. (Dkt. 58-2 at 1-2).

The Court has carefully reviewed the record and construes Plaintiff's pro se pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). This relaxed standard, however, does not relieve Plaintiff's burden of compliance with the exhaustion requirement. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Plaintiff argues that the prison officials impeded efforts to exhaust administrative

remedies to the point that the process was unavailable. Plaintiff, therefore, asserts the Court should excuse any failure to exhaust. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.") (citation omitted).

Although these grievance proceeding are somewhat confusing, the Court finds much of the confusion arose from Plaintiff's failure to comply with the grievance policy. The Court further finds that Sorrells' determination that Plaintiff's December 29, 2015, RTS and Grievance No. 16-04 requested different actions was correct. The RTS merely asked that Sorrells scan the PIARA request, while the grievance set forth a very specific, long list of requested items and actions. Plaintiff simply did not follow the instructions for proceeding through the grievance process with these issues. The argument that the exhaustion process was seen to its conclusion by filing the request to submit an appeal out of time also is erroneous.

After consideration of the pleadings and other submitted materials, the Court is of the view that there are no genuine issues of material fact with respect to whether Plaintiff's claims are unexhausted. Therefore, summary judgment is granted on this issue.

**Eleventh Amendment Immunity**

Defendants allege any official-capacity claims against them are barred by the Eleventh Amendment. Such official-capacity claims actually are claims against the State of Oklahoma. "[T]he Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and injunctive relief, or a state official acting in her official capacity in a suit for damages." *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F .3d 1186, 1196 (10th Cir. 1998). Absent a waiver by the State, or a valid congressional override, the amendment bars

a damages action against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The State has not waived Eleventh Amendment immunity in this case. The Court, therefore, finds Defendants are entitled to Eleventh Amendment immunity.

**Personal Participation**

Defendants also allege Plaintiff has failed to show the personal participation of any individual defendant in the alleged constitutional violations. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passaic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Me v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992). Plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory status alone is not sufficient to support liability under § 1983. *Id*. *See also Polk County v. Dobson*, 454 U.S. 312, 325 (1981).

Supervisory liability under § 1983 may not be premised upon a theory of respondent superior. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). To succeed on a supervisory liability theory, a plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Booker*, 745 F.3d at 435 (quoting *Schneider*, 717 F.3d at 767). To demonstrate that link, "three elements [are] required to establish a successful § 1983 claim against a defendant based upon his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *Schneider*, 717 F.3d at 767. Because Plaintiff has failed to demonstrate any individual defendant's personal involvement in the alleged constitutional violations, Defendants are entitled to summary judgment on this claim.

**Eighth Amendment Medical Claims**

Defendants further assert there is no showing of deliberate indifference to Plaintiff's serious medical needs.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

Deliberate indifference involves both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id*. (quoting *Wilson v. Seizer*, 501 U.S. 294, 298 (1991)). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (internal quotation marks omitted). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

"[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d

1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). *See also Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing *Oxendine*, 241 F.3d at 1278).

Here, Plaintiff is complaining that Defendants denied him "any" medical treatment for gender nonconforming disorder and stopped his medication (Dkt. 1 at 2, 5-6, 8). It is clear from the record, however, that Plaintiff received medical treatment to discuss his gender issues beginning on September 22, 2015. (Dkt. 56-1 at 30). Plaintiff was seen on numerous occasions from that date for the same issue. *Id.* at 31-37, 47, 70. Plaintiff's diagnosis remains as "suspect for Gender Identity Disorder." *Id*. at 34-36. Plaintiff is requesting through this lawsuit an "updated Gender Identity Disorder Diagnosis." (Dkt. 1 at 6).

According to Plaintiff, Defendant OSP Medical Administrator Patricia Sorrells "abruptly stopped my chronic medication I had been taken for 15 years solely because I was filing grievances and complaints." (Dkt. 1 at 5). Plaintiff, however, has provided no evidence regarding which medications were stopped and when the medications were stopped, and the retaliation claim is completely unsupported.

After review of the record, the Court finds the acts complained of do not show deliberate indifference to plaintiff's medical needs as alleged. It is clear from the record that medical care was provided. Where there is such evidence of a "series of sick calls, examinations, diagnoses, and medication . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). To the extent plaintiff is complaining about the inadequacy of medical care provided,

the court finds plaintiff is merely asserting a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances. It is well settled that this type of disagreement fails to give rise to a cause of action under § 1983. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978), and cases cited therein. Here, the Court finds there are no genuine issues of material fact, and summary judgment is warranted.

**Due Process Claims**

Plaintiff asserts a denial of due process of law, based on an alleged denial of a hearing concerning placement in a single cell. (Dkt. 1 at 2, 5, 7). Plaintiff also complains of the denial of a transfer to a lower security level, and denial of jobs, programs, and parole. *Id.*

### *Single-Cell Status*

The complaint alleges Plaintiff was denied a hearing and never given the reason for placement on single-cell status. (Dkt. 1 at 2, 5, 7). Even if Plaintiff had followed proper grievance procedures, "[t]here is no independent constitutional right to state administrative grievance procedures." *Boyd v. Weholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (citations omitted). In addition, because Plaintiff is a prisoner, he does not have a protected liberty interest in the grievance procedure, and it therefore does not implicate any due process rights. *Murray v. Albany County Bd. of County Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (*quoting Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)). *See also Spry v. McKune*, 479 F. App'x 180, 181 (10th Cir. 2012) (affirming district court's dismissal of plaintiff's due process claim premised upon unavailability of administrative remedy for failure to state a claim upon which relief can be granted).

"The Due Process Clause imposes no procedural constraints on a prison official in ordering special conditions of confinement unless the official 'imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life.'" *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Administrative segregation, however, "may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. at 483. The review need not be extensive, but it must be meaningful and not a sham or pretext. *Toevs v. Reid*, 685 F.3d 903, 912 (10th Cir. 2012).

Here, Plaintiff has routinely been overridden to maximum security since 2007, generally because of his single-cell assignment resulting from sexual activity and fighting, with no single cell being available at a lower security. (Dkt. 54-13). Consequently, Plaintiff's claim that he was denied a hearing and never told why he was on single-cell status fails.

### Transfer to Lower Security

Plaintiff alleges the denial of a transfer to a lower security facility infringed upon a liberty interest within the meaning of the Due Process Clause. It is well settled that there is no constitutional right to incarceration in a particular correctional facility, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), and changes in prison security classifications do not implicate Fourteenth Amendment liberty interests. *Meachum v Fano*, 427 U.S. 215 (1976).

> [N]o Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events.

*Montanye v. Haymes*, 427 U.S. 236, 242 (1976). In addition, the Tenth Circuit Court of Appeals has held that the Oklahoma prison classification system creates no liberty interest for a particular classification. *Twyman v. Crisp*, 584 F.2d 352, 355-57 (10th Cir. 1978). The mere change of a prisoner's classification does not deprive him of liberty, because a prisoner is not entitled to a particular degree of liberty in prison. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

Here, Plaintiff is on single-cell status for the above-stated reasons, and there are no available single cells at lower security. (Dkt. 54-13 at 12). The Court finds no constitutional violation.

### Denial of Jobs, Programs, and Parole

Plaintiff claims he has been denied jobs, programs, and parole. (Dkt. 1 at 2, 5, 7). There is no federal constitutional right to be conditionally released before the expiration of a valid sentence, and the states are under no duty to offer parole to their prisoners. *Greenholtz Inmates v. Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Parole is a privilege. *Lustgarden v. Gunter*, 966 F.2d 552 (10th Cir. 1992), *cert. denied*, 506 U.S. 1008 (1992).

Absent a statute or regulation which entitles them to prison jobs, inmates do not have a constitutional right to employment. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986); *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996). Likewise, "[c]ourts have not accepted the claim that an inmate has a constitutional right to any educational, or other programs, and there has never been a recognized constitutional right of rehabilitation for prisoners." *Termunde v. Cook*, 684 F. Supp. 255, 259 (D. Utah 1988); *see also Johnson v. Galli*, 596 F. Supp. 135, 159 (D. Nev. 1984) ("There is no constitutional right to rehabilitation; idleness and a lack of

programs do not violate the Constitution.").

Because there are no genuine issues of material fact, summary judgment must be granted on all of Plaintiff's due process claims.

## Qualified Immunity

Defendants have asserted they are entitled to qualified immunity. Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). It provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," and operates to protect officers from the sometimes "hazy border[s]" of the law. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

When a defendant asserts qualified immunity, the plaintiff bears the heavy burden of demonstrating: (1) that the defendant's actions violated the plaintiff's constitutional or statutory rights; and (2) that the right was clearly established at the time. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The court "has discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* (quoting *Pearson*, 555 U.S. at 129). In this case, because Defendants did not violate Plaintiff's constitutional rights, this Court need not address whether those rights were clearly established. Accordingly, Defendants are entitled to qualified immunity.

**State Tort Claims**

Plaintiff alleges actions by Defendants were discriminatory, based solely on Plaintiff's being transgendered and his filing of grievances and complaints. (Dkt. 1 at 2, 5-8). He further claims "Defendant Perry talks very negative about me around the others." (Dkt. 1 at 10). Plaintiff also alleges two assaults by an unnamed officer, but offers no details about the alleged incidents. *Id.* Defendants contend these allegations may be construed a raising a cause of action for torts of outrage, or intentional infliction of emotional distress.

The preceding analysis disposed of all of Plaintiff's claims arising under federal law, and, consequently, the basis for federal subject matter jurisdiction. "Under these circumstances, the district court may decline to exercise continuing 'pendent' or supplemental jurisdiction over plaintiff's state claims." *Lancaster Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966)). The Court, therefore, declines jurisdiction over Plaintiff's state law claims.

**Injunctive Relief**

Plaintiff has filed numerous requests for injunctive relief. The complaint requests an injunction "to get Plaintiff a Transgender Specialist, transfer to lower security, treatment for gender disorder, job, program, etc…soon." (Dkt. 1 at 10). In addition, Plaintiff has filed three motions for injunctive relief asking for relief to prevent ongoing harm from certain prison officials.

In the first motion, Plaintiff complains that Officer Howell and Sergeant McCall have harassed Plaintiff. In addition, Defendant Perry threatened Plaintiff with a misconduct if Plaintiff filed any more medical or PREA complaints or grievances. (Dkt. 61).

In the second motion, Plaintiff alleges a lieutenant (name is illegible) threatened to

physically beat Plaintiff if any more paperwork against his officers is filed.  In addition, Defendant Perry called Plaintiff about Plaintiff's filings.  Plaintiff further asserts Sergeant Cooper retaliated against Plaintiff because of Plaintiff's filings, and Cooper took Plaintiff's "shower" and attempted to take Plaintiff's recreation, while threatening Plaintiff and using derogatory names.  (Dkt. 64).

In the third motion, Plaintiff claims Dr. Self, the Mental Health Administrator, informed Plaintiff of the doctor's planned transfer to Joseph Harp Correctional Center ("JHCC").  Dr. Self allegedly also planned to transfer numerous OSP inmates, including Plaintiff, to JHCC to join the LGBTQ at that facility.  Plaintiff, however, was not included in the transfer and later learned that Defendant Perry prevented Plaintiff's move because of Plaintiff's litigation.  (Dkt. 66).

To the extent Plaintiff is seeking injunctive relief from non-parties, the Court cannot grant relief against an individual who is not a named defendant.  To be entitled to injunctive relief, the movant must establish a violation of his constitutional rights.  *Rizzo v. Goode*, 423 U.S. 362, 377 (1976).  Plaintiff, however, has failed to plead any facts to sustain a finding of an ongoing constitutional violation.  Therefore, Plaintiff is not entitled to relief.

**ACCORDINGLY,** Defendants' motion for summary judgment (Dkt. 55) is GRANTED as to Plaintiff's federal civil rights claims.  Plaintiff's motions for injunctive relief (Dkts. 61, 64, 66) are DENIED, and all remaining pending motions are DENIED as moot.

**IT IS SO ORDERED** this  28th  day of March 2018.

Ronald A. White
United States District Judge
Eastern District of Oklahoma